<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STORYSOFT LLC,<br><br>Plaintiff,<br><br>v.<br><br>WEBMD LLC D/B/A MEDSCAPE,<br><br>Defendant. | Civil Action No. 23-20390<br><br>**OPINION**<br><br>August 13, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant WebMD LLC d/b/a Medscape's ("Medscape" or "Defendant") Motion to Dismiss Plaintiff Storysoft LLC's ("Storysoft" or "Plaintiff") Verified Complaint (ECF 1, "Compl.") pursuant to Rule 12(b)(6). (ECF 35, "MTD.") The Court reviewed all submissions in support and in opposition and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]</u>

Storysoft is a software and service provider to biotech, medical, and pharmaceutical companies. (ECF 1, Compl. ¶ 28.) It uses an online digital storytelling software service and platform under the name "Storysoft," providing various associated services ("Storysoft Platform

---

[1] The allegations in the Complaint must be accepted as true solely for purposes of this Motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court also relies on documents integral to or relied upon by the Complaint and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

and Services"). (*Id*.) The Storysoft Platform and Services "is a unique marketing product, platform, and service offered by Storysoft to Storysoft Clients to assist them in their marketing efforts and drive sales with respect to their various brand products." (*Id*. ¶ 29.) The services allow for the creation and distribution of interactive digital stories ("Client Stories"), like those seen on social media platforms including Instagram. (*Id*. ¶ 30.) Through these services, clients can engage Storysoft to create Client Stories, have Storysoft work with a third-party designer, or a combination of the two to publish Client Stories, which can be distributed via a URL as a standalone microsite or integrated into existing web applications. (*Id*. ¶¶ 31, 32.) Storysoft then processes the information collected with these services into "actionable insights" on optimizing content, understanding audiences, and evaluating the performance of third-party marketing efforts sending traffic to the stories. (*Id.* ¶ 33.)

Medscape is described on its website as "a top online hub for doctors and healthcare professionals globally. It provides up-to-date medical news, expert views, critical drug and disease information, as well as pertinent professional education and Continuing Medical Education (CME)." (*Id*. ¶ 37.) The company sells advertising space within products comprising their website ecosystem to pharmaceutical companies in the life science industry. (*Id.* ¶ 38.)

Over the last several years, Storysoft has allegedly overcome product development challenges and expended significant time, resources, and investments in a "highly regulated industry." (*Id.* ¶ 3.) The company's efforts in educating its clients as to its Client Stories and technical aspects of its platform enabling their functionality contributed to the product's major success, working for large companies in the life science industry such as Merck Sharp & Dohme Corp. ("Merck"), Sanofi U.S. ("Sanofi"), and Janssen Biotech, Inc. ("Janssen") (collectively, the "Clients"). (*Id.* ¶¶ 4, 5, 19, 21, 23.) These clients are at the center of the instant matter.

The first Client, Merck, has been a client for the last two years, representing a substantial portion of the latter's revenue with respect to the marketing of "KEYTRUDA," an immunotherapy. (*Id.* ¶ 58.) Upon entering their business relationship, they entered into confidentiality agreements (collectively, the "Merck-Storysoft Confidentiality Agreements") that cover the nondisclosure of Storysoft's Confidential Information ("Confidential Information"). (*Id.* ¶ 61.) This Confidential Information includes "copyrighted material, trade secrets, technical data, proprietary information, and other materials. (*Id.* ¶ 146.) The Merck-Storysoft Confidentiality Agreements are purportedly directed toward Medscape and the implementation of Storysoft's Client Stories and materials concerning the Storysoft Platform and Services for Merck on the Medscape website. (*Id.* ¶¶ 62, 63.)

Merck employed Wildtype Health ("Wildtype"), a marketing/creative advertising agency, to work with Medscape and Storysoft to develop Client Stories for Merck regarding KEYTRUDA. (*Id*. ¶¶ 20, 66, 67.) Accordingly, Storysoft provided Wildtype with technical and other Confidential Information on January 24 and March 9 of 2022. (*Id*. ¶ 70.) Medscape had "full knowledge that Storysoft was engaging with Wildtype for the creation, development, implementation, and/or placement of Client Stories for Merck's KEYTRUDA product which could be used on the Medscape [w]ebsite." (*Id.* ¶ 72.) Subsequently, Wildtype began engaging with Medscape in October of 2022 concerning the implementation of Storysoft's KEYTRUDA Client Stories on the Medscape website, specifically on a Medscape Infosite. (*Id.* ¶ 73.) Storysoft and Wildtype provided Storysoft Confidential Information to Medscape "with the express purpose and intent of implementing, incorporating, and/or placing the KEYTRUDA Client Stories on the Medscape [w]ebsite." (*Id.* ¶ 78.) However, following these engagements, on October 31, 2022, Medscape advised that the Client Stories were allegedly incompatible with the "InfoSite" portion of the

Medscape website. (*Id*. ¶ 81.) Storysoft alleges any technical challenges were readily resolvable by the Storysoft team.  In early 2023, Wildtype notified Storysoft of an additional Client Story for Merck, with Medscape now vying for the business and pitching what Plaintiff calls the "Medscape Knockoff." (*Id*. ¶ 86.) A Wildtype representative contended it was Medscape's own version of Storysoft, a "blatant rip off"; Merck accepted Medscape's proposal and awarded it a contract to create its "knockoff." (*Id*. ¶¶ 87, 88, 89.) It was to be used in place of Storysoft's Client Story. (*Id*. ¶ 91.) On July 25, 2023, another Merck KEYTRUDA team purchased a Medscape Knockoff story. (*Id*. ¶ 92.)

The second Client, Sanofi, has worked with Storysoft for two years after becoming the latter's first client, and "protects the public health by creating vaccines." (*Id*. ¶¶ 94-96.) Like Merck, Sanofi employs a marketing agency to perform services, called Havas Health, Inc. d/b/a Havas Health & You ("Havas"), which also entered into a confidentiality agreement (the "Storysoft-Havas Confidentiality Agreement") that prohibited the use and disclosure of Storysoft's Confidential Information. (*Id*. ¶¶ 22, 97, 102, 103.) A Storysoft-Havas Agreement and Storysoft-Havas NDA also covered the Confidential Information. (*Id*. ¶ 105.)

Sanofi contacted Storysoft to develop Client Stories regarding "SOLIQUA" on the Medscape website on or around August 2, 2022. (*Id*. ¶ 108.) Storysoft "advised that it would be happy to explain to Medscape the functionality of Storysoft's Client Stories and how to embed and incorporate SOLIQUA Client Stories for placement on the Medscape [w]ebsite." (*Id*. ¶ 112.)  A Sanofi representative notified Storysoft on August 5, 2022 that Medscape would not be able to accommodate the Client Story and its "specs." (*Id*. ¶ 113.) Pursuant to a September 6, 2022 conference call regarding the implementation of the stories, "Storysoft disclosed substantial Confidential Information to Havas, Sanofi, and Medscape in a good faith attempt to resolve any

4

alleged technical issues that would allow for the implementation and placement of SOLIQUA Client Stories on the Medscape [w]ebsite." (*Id*. ¶ 116.) The company provided Medscape with Storysoft's embedding guidelines for the Client Stories, which comprise Storysoft's Confidential Information, including proprietary software code. (*Id.* ¶¶ 117-18.) Storysoft allegedly never heard back from Medscape on the Client Stories and learned, on June 21, 2023, that Medscape was pitching the knockoff to Sanofi. (*Id*. ¶¶ 119-20.)

The third Client, Janssen, creates medications to fight diseases in a variety of therapeutic areas, including immunology, infectious diseases, pulmonary hypertension, neuroscience, oncology, cardiovascular, and metabolism. (*Id.* ¶ 122.) The company and Storysoft entered into a service agreement on October 20, 2021 (the "Janssen-Storysoft Agreement") which includes the latter's Confidential Information. (*Id.* ¶ 123.) Storysoft has been under contract since August of 2021 to provide Client Stories for Janssen, and Medscape was simultaneously conducting business with Janssen through its corporate parent, WebMD, to advertise "DARZALEX via banner ads on the WebMD website." (*Id.* ¶¶ 125-26.) On October 19, 2022, Storysoft presented the Storysoft Platform and Service and Storysoft's Client Stories to Medscape, whose representatives stated they did not have an existing product like Plaintiff's Client Stories, and provided details on technical requirements and functionality and other Confidential Information including Storysoft's four DARZALEX Client Stories for Janssen, its several different channels to drive Client Stories, and how Storysoft is able to customize its stories to accommodate third-party publisher sites. (*Id.* ¶¶ 128-29, 131-32.) Medscape continued to ask questions of Storysoft regarding detailed information regarding the specifications of Storysoft's products and display, and Storysoft provided this in kind. (*Id.* ¶ 134.) Storysoft has worked without issue with several third-party website publishers

between December of 2022 and January of 2023, successfully embedding Client Stories for Janssen on their websites. (*Id*. ¶ 135.)

> Storysoft contends that through
>
> calculated and coordinated discussions, conferences, and communications, all under the auspices of and directed to Storysoft creating, developing, implementing, and/or placing Client Stories directed to various brand products by Merck, Sanofi and Janssen on various portions or within various products comprising the website ecosystem owned, operated, and maintained by Medscape, Medscape was able to gain access to Storysoft's Confidential Information.

(*Id*. ¶ 6.) Accordingly, Storysoft alleges that all "Confidential Information provided by Storysoft to Medscape was covered under the various Confidentiality Agreement[s] by and between Storysoft Clients and/or the marketing agencies working for or on behalf of Storysoft Clients" and that "[a]s a result, Medscape was in privity of contract and/or a beneficiary and/or third party to all such contracts and agreements." (*Id*. ¶ 147.) Medscape allegedly used the conversations occurring in the fall of 2022 to use the Confidential Information learned to build its "knockoff product" rather than accept Storysoft clients' requests to partner with Storysoft. (*Id.* ¶ 140.) Storysoft has since not received any additional business from the teams at Medscape, Sanofi or Janssen since the fourth quarter of 2022. (*Id.* ¶ 144.) Commencing in June of 2023, Storysoft was contacted by various representatives from certain clients that Medscape was trying to poach these clients with the knockoff. (*Id.* ¶ 145.)

Storysoft filed its Verified Complaint on September 14, 2023. (*See* ECF 1, Compl.) The Complaint asserts five counts: Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.* (Count I), Misappropriation of Trade Secrets under the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. § 56:15-1, *et seq.* (Count II), Tortious Interference with Existing, Prospective, and Contractual Business Relations (Count III), Breach of Contract (Count IV), and Copyright Infringement pursuant to 17 U.S.C. § 501, *et seq*. (Count V).

6

(ECF 1, Compl. at 37-45.) Medscape filed the instant motion to dismiss the Verified Complaint on January 5, 2024. (ECF 35, MTD.) Storysoft filed its opposition on February 5, 2024. (ECF 43, "Opp.") Medscape filed a reply on February 16, 2024. (ECF 44, "Reply.")

## II.   <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure

to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.    ANALYSIS

Plaintiff brings claims under DTSA and NJTSA (Counts I and II), tortious interference with existing, prospective, and contractual business relations (Count III), breach of contract (Count IV), and copyright infringement (Count V). (ECF 1, Compl. at 37-45.) Defendant moves to dismiss each count. (*See generally* ECF 35, MTD.) The Court will address each claim in turn.

### A.  Misappropriation of Trade Secrets Under DTSA and NJTSA (Counts I and II)

Defendant argues that Plaintiff failed to identify the trade secrets at issue or in the alternative, Plaintiff failed to take reasonable measures to maintain their secrecy. (ECF 35, MTD at 15-18.) Plaintiff argues that determination of what constitutes a trade secret is a question of fact not suited for adjudication at a motion to dismiss; Plaintiff also argues that the Complaint properly alleges the federal and New Jersey trade secret misappropriation claims. (ECF 43, Opp. at 7-21.)

Because "courts in this district 'fold' the DTSA analysis into the NJTSA review," the Court considers the two claims together. *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019) (quoting *Scherer Design*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018)). Notably, there is no heightened pleading standard for a misappropriation of trade secrets claim. *See IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *7 (D.N.J. Sept. 13, 2012); *Oakwood Labs v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021). To state a claim under DTSA and the NJTSA, a plaintiff must allege: (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that it is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that

trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret. *Oakwood Labs*, 999 F.3d at 905. Circumstantial claims may be credited at the motion to dismiss stage given the lack of discovery to inform the complaint, so long as these claims raise a right to relief above the speculative level. *Id.* at 913.

A plaintiff must allege two elements to demarcate a trade secret in a pleading. First, the complainant "must sufficiently identify the information it claims as a trade secret," and, second, the complainant "must allege facts supporting the assertion that the information is indeed protectable as such." *Id.* at 905. In identifying a trade secret, (i) "[t]he [allegedly] misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it"; and (ii) "the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 906-13. A complaint does not, however, need to "spell out the details" of the trade secret to avoid dismissal. *Id.* at 906 (citation omitted). Indeed, sufficient identification of the information does not require scientific specificity at the complaint stage, rather, lists of categories of data can be sufficient. *OWAL Inc. v. Caregility Corp.*, No. 21-13407, 2022 WL 890182, at *7 (D.N.J. Mar. 25, 2022). Further, whether a complainant has adequately demarcated a trade secret is a fact-specific inquiry for each case. *Id.* (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)). The standard, however, is one of notice, not of detail, and this District has been clear that a plaintiff is not required to "articulate each individual trade secret by name and description" at the pleading stage. *Rodgers Grp., LLC v. Lewis*, No. 22-482, 2022 WL 4095785, at *4 (D.N.J. Sept. 7, 2022).

Here, Plaintiff identifies the proprietary materials and information provided by Storysoft to clients as valuable intellectual property, including valuable proprietary software code, details regarding the development, use, and customization of the Client Stories product, and business and marketing strategy. (ECF 1, Compl. ¶¶ 99, 118, 131, 133.) Per the Complaint, Defendant "outright stole[] various copyrighted material, trade secrets, technical data, proprietary information and other materials . . ." (*Id*. ¶ 146.) The listing of relatively broad categories of information can be acceptable at the pleading stage, particularly if these lists are linked to the circumstances by which the information is stolen (such as listing categories of information that may have been included on a pitch deck or thumb drive that was taken). For example, in *OWAL Inc. v. Caregility Corp.*, the court held that lists of "confidential information" including "notes, analyses, compilations, studies, or other documents," and "evaluation materials" including, among other categories, "financial information, business plans and strategies [and] marketing plans" was sufficient to plead specific trade secrets, as this information was linked to "materials [plaintiff] provided to [defendant]." *OWAL Inc.*, 2022 WL 890182, at *7. The listed categories and their link to a claim of potential misappropriation mimics the relatively broad types of documents specified in *OWAL*, where the pleading was held to be sufficiently specific. *See also Ho-Ho-Kus, Inc. v. Sucharski*, No. 23-01677, 2023 WL 7403539, at *6-9 (D.N.J. Nov. 9, 2023). As such, the Court declines to dismiss Counts I and II at this time.[2]

**B. Tortious Interference (Count III) and Breach of Contract (Count IV)**

Defendant argues that Plaintiff's tortious interference claim should be dismissed because Plaintiff fails to allege that Defendant acted intentionally for the sole purpose of harming Plaintiff

---

[2] Defendant also argues that the Complaint fails to state a claim for misappropriation of trade secrets because Plaintiff did not allege that it took reasonable measures to keep the confidential information from Defendant. The numerous allegations in the Complaint regarding confidentiality agreements sufficiently capture Plaintiff's reasonable measure of keeping the relevant information secret. *See Oakwood Labs*, 999 F.3d at 905.

and because Plaintiff failed to plead facts showing that Defendant's tortious interference caused

Plaintiff to suffer damages. (ECF 35, MTD at 21-24.) Plaintiff argues that the Complaint

sufficiently alleges tortious interference. (ECF 43, Opp. at 21-25.)

A tortious interference claim requires a plaintiff to show:

> (1) that it had an existing contract or reasonable expectation of economic benefit or
> advantage; (2) that the defendant knew of the contract or expectancy; (3) that the
> defendant wrongfully interfered with that contract or expectancy; (4) that it is
> reasonably probable that the loss of the contract or prospective economic gain was
> a result of the interference; and (5) that damages resulted from the interference.

*Freedom Funding Grp., Inc. v. Freedom Fundinggroup LLC*, No. 20-18404, 2022 WL 3681281,

at *15 (D.N.J. Aug. 25, 2022).

Here, Plaintiff alleges that it had existing contractual relations with Merck, Sanofi, and

Jannsen (ECF 1, Compl. ¶¶ 7, 58, 60, 95, 123, 137); Defendant knew of the contract or expectancy

(*id*. ¶¶ 5-6, 44, 72, 129, 137, 145); Defendant wrongfully interfered with the contract or expectancy

(*id*. ¶¶ 5-6, 8, 11, 44, 51, 53, 136, 140, 145-46); it was reasonably probable that the loss of the

contract or prospective economic gain was a result of the interference (*id*. ¶¶ 5-6, 11-12, 44-46,

53-54, 93); and damages resulted from the interference (*id*. ¶¶ 93, 121, 142, 144). As such, the

Court declines to dismiss Count III for tortious interference.

With respect to the breach of contract claim, Defendant argues that it was not a party to

any of the relevant confidentiality agreements. (ECF 35, MTD at 24-26.) Plaintiff argues that

Defendant is legally bound to the confidentiality agreements as a third-party beneficiary. (ECF 43,

Opp. at 25-27.)

To establish a claim for breach of contract, a plaintiff must show: "(1) a contract [existed]

between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the

party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507

F.3d 188, 203 (3d Cir. 2007). Under New Jersey law, "[t]o determine whether a person qualifies

as a third-party beneficiary, the test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts[.]" *Werrmann v. Aratusa, Ltd.*, 630 A.2d 302, 305 (N.J. Super. Ct. App. Div. 1993) (quoting *Rieder Communities, Inc. v. North Brunswick Twp.*, 546 A.2d 563, 566 (N.J. 1988)) (internal quotations omitted). "The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." *Broadway Maintenance Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982) (citing Restatement (Second) of Contracts § 302 (1979)). Here, Plaintiff does not allege that it entered direct contracts with Defendant. Under the third-party beneficiary theory, the breach of contract claim fails because the confidentiality agreements as alleged do not recognize Defendant's right to performance. Defendant did not benefit from the existence of the contract and there are no allegations that the contractual parties intended to benefit Defendant. *See Broadway Maintenance Corp.*, 447 A.2d at 909. As such, the Court dismisses the breach of contract claim without prejudice.

### C.  Copyright Infringement (Count V)

Defendant argues that the copyright infringement claim should be dismissed because Exhibit B of the Complaint is not copyrightable subject matter, and because Defendant did not copy the entirety of the Exhibit. (ECF 35, MTD at 18-22.) Plaintiff argues that Defendant confused the content of Storysoft's Copyright Materials with Storysoft's Trade Secrets. (ECF 43, Opp. at 10-11.)

The Copyright Act of 1976 (the "Act") provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501. The Act enumerates six activities, including reproduction, transfer, and public display of the copyrighted work, that the

copyright owner has the exclusive right "to do" and "to authorize." 17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner, that is, anyone who trespasses into [the owner's] exclusive domain by using or authorizing the use of the copyrighted work . . . is an infringer of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (quotation and citation omitted).

A claim for copyright infringement involves two "essential elements: ownership of copyright, and copying by the defendant." *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Company, Inc.*, 290 F.3d 548, 561 (3d Cir. 2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986)); *see also Winstead v. Jackson*, 509 Fed. App'x 139, 143 (3d Cir. 2013) (stating that "[t]o establish a claim of copyright infringement, the plaintiff must establish ownership of a valid copyright, and unauthorized copying of protectable elements of the plaintiff's work.").

Here, Plaintiff's copyright infringement claim centers around the "Storysoft Copyright." (ECF 1, Compl. ¶ 210.) The Storysoft Copyright refers to Plaintiff's registered copyright, the copy of the Certificate of Copyright Registration attached to the Complaint as Exhibit A. (ECF 1, Compl., Ex. A.) The copyright specimen covered by the Storysoft Copyright is attached as Exhibit B. (*Id.*, Ex. B.) The Complaint adequately contains allegations of "reproduction of, distribution of, and creation of derivative works from the Storysoft Work constitut[ing] the direct infringement by Medscape of the Storysoft Work and the Storysoft Copyright." (*Id.* ¶ 213; *see also* ¶¶ 148-66.) Accordingly, the Court declines to dismiss the copyright infringement claim.[3]

---

[3] Defendant also argues that if Plaintiff's copyright claim survives, the misappropriation of trade secrets and tortious interference state law claims should be dismissed as preempted by Section 301 of the Copyright Act, 17 U.S.C. § 301. However, because Plaintiff's causes of action for misappropriation of trade secrets under NJTSA and tortious interference are alleged as sufficiently distinct from Plaintiff's rights under the Copyright Act, the Court refuses to dismiss these claims as preempted at this time. "[T]he federal Copyright Act does not preempt a claim where 'an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action . . . A state law claim is not preempted if the extra element changes

IV.    <u>**CONCLUSION**</u>

For the reasons stated above, Defendant's Motion to Dismiss (ECF 35) is **GRANTED IN PART AND DENIED IN PART**. Counts I, II, III, and V of the Complaint (ECF 1) survive the motion to dismiss. Count IV is dismissed without prejudice. Within sixty (60) days, Plaintiff may file an amended complaint addressing the deficiencies identified in this Opinion. An appropriate order follows.

*/s/ Jamel K. Semper*

**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:      José R. Almonte, U.S.M.J.
         Parties

---

the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F.Supp.2d 552, 564 (D.N.J. 2002) (quoting *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Svcs., Inc.*, 995 F. Supp. 468, 479-80 (D.N.J. 1998)).